All right, our next case for argument is 24-1453 National Steel Car v. Greenbrier, Mr. Levelle. How do I say your name? Levelle. It's pronounced easier than it's spelled, Your Honor. Mr. Levelle. Say it again? Levelle, like L-E-V-E-L. Mr. Levelle. Okay, like a level. Yeah, got it. All right, Mr. Levelle, please proceed. Thank you, Your Honor. Good morning and may it please the Court. The District Court's summary judgment of non-infringement should be vacated, and this case should be remanded back to the District Court for further proceedings under the proper construction of the relatively straightforward terms floor panel and deck. The Court erroneously read into those two basic claim terms at least two limitations that are not warranted in the plain and ordinary meaning of the claim and are not included in the Court's actual claim construction. The Court issued a claim construction order, and the parties litigated under that claim construction order for two years. And then at the last moment in the summary judgment opinion, the Court added two additional limitations that are not in the Court's claim construction. And the District Court did so, and it did so very clearly, without actually modifying the Court's claim construction. Okay, well, let's just get to it. Floor panel versus floor panel extension, right? Well, it's floor extension versus floor panel extension. The Court's claim construction just required an extension. Well, but the extension is part of the construction of floor panel, correct? Well, the... Is the extension part of the construction of floor panel? The word extension is within the construction of floor panel. So how can it be talking about something other than the floor panel? Because the phrase as a whole is the floor, including at least one floor panel. Yes, but the extension is in the context of the floor panel. Well, the... The construction. What am I missing? This was not within the construction of the word floor, was it? The extension was in the construction of the word floor, which is a separate claim term than the word floor panel. Right, but it's also the construction of the term deck. And, yes, we did agree that the Court could construe them similarly, but there's nothing in the claim term deck that requires that the extension be a floor panel extension. Well, it would just be a deck extension. Right, that would be fine. Well, let's start from the beginning. I don't even understand your argument. What is the distinction between a floor extension and a floor panel extension? Let's just assume that right now, to me, extensions, floor panel extensions, floor extensions, they all mean the same thing and they're interchangeable. And so whenever a party or a judge was referring to an extension or a floor extension, it was also referring to a floor panel extension. And can you tell me why does it matter? Well, it matter, it arguably didn't matter unless and until, well, it became more important once the Court required that extension in the Court's summary judgment order inherently requires two things to physically touch. Under that assumption, the difference between a floor panel extension and a floor extension would be what it has to touch. If we assume, because the Court said they have to touch, two things for an extension in the Court's summary judgment order, not in the claim construction order, the judge concluded that an extension must inherently touch something. So why wouldn't a floor extension also be required to touch the floor panel? A floor extension, we would be okay, and they would still infringe, if a floor extension had to touch the floor. Their gusset is welded to the floor. It is not welded directly to a sheet, because the floor has to include one or more floor panel, but the floor can include other things. And in this case, they've got a narrow strip that's not a sheet. Right, but this is a claim construction of floor panel. This is not a claim construction of floor, right? Well, it's a claim construction of floor panel and deck. Right. Within the claim language. Let's just focus on floor panel for now. Well, why isn't it logical to understand this claim construction and claim, to the extent there's any extensions, it has to extend from the floor panel sheet, i.e. be connected to the sheet that makes up the floor panel. Well, there's nothing in the claim that requires the floor panels touch each other. And in our view, in the original view, as we asserted the patent originally, these gussets were floor panels. And council's proposed construction, which we modified our proposed construction. We tried to narrow the issues for the court. Their construction, their proposed construction for two and a half years, said floor extension. We saw that, and we said, okay, we can work with that proposed construction of theirs. And when we modified our construction, as long as they didn't have to be welded directly together, we were okay with that. So they were arguing for two and a half years that a floor panel includes floor extensions. And the district court said floor extensions five times in its claim construction order. And therefore, our infringement expert, our expert reports, everything analysis, all the analysis in the case, was on a floor extension because that's the claim construction that the court eventually adopted on the second try, just as extensions. But the court's claim construction order says floor extensions five times. The parties, the- Right. And it was talking about floor extensions in the context of what was disclosed in the specification, right? It was trying to figure out what is the meaning of floor panel, and it consulted the specification. And the specification talked about examples of how you can have these things called extensions, which might be integral to the floor sheet, or you could have a separate piece sheet that is a floor extension that then gets welded to the first floor sheet. And in that context, those two things should be considered part of a floor panel, and so in that context, that's what the judge said in terms of construing floor panel. It includes an extension, but the extension is either integral to the floor sheet or it's welded to, attached to, connected to the floor sheet. In the summary judgment order, that's what the judge concluded. In the court's claim construction order, the court is very clear. It's a cardinal sin to read limitations from the preferred embodiment into the claim, and that's why the court revised its claim construction to include the word separate extensions. Well, in the original claim construction order, on page 46, the court actually said the floor panel can have extensions. Right. I mean, that was always contemplated, that there could be extensions on the floor panel. Right. The construction says extensions. It could be either. It could be physically attached, assuming it has to be welded. No, the claim construction didn't say it could be either. The claim construction order never said that. Well, the claim construction just says extensions. It doesn't? No, the claim construction says, quote, additionally the floor panel may have extensions. That's what the claim construction order says at A46. Additionally, the floor panel may have extensions. Am I wrong? A46. Do you have A46? I do. That's the original claim construction. The court revised that claim construction, and that's at Appendix 32. And the court said a floor panel or deck can be one sheet or plurality of sheets joined together, and may also include one or more extensions, which may be integral or which can be separate. The word is just extensions. But that's still the floor panel can have those things. Right. That's the definition of floor panel. Right. Okay, well, let's talk about the separate issue, if I may, because that clarifies this issue as well. If we assume that because their gusset is a floor panel extension, and our expert concluded that. So you don't need to find a floor extension. You don't need to find that their floor gusset is a floor extension in order to vacate the summary judgment order. Their gusset is also a floor panel extension because it is an extension that is separate from and not connected to another floor panel. And there's support in the specification. There are stiffener extensions. There are sidewall web extensions that don't touch. The sidewall web extension doesn't touch the sidewall web. The stiffener extension does not touch the stiffener. Those don't relate to the floor panel. Those relate to other components of the gondola car. Right. But in the court's original construction, well, the court's actual construction that says they can be separate was issued when both parties agreed that the term separate meant they don't have to touch. Greenbrier court said. Well, I wish you didn't double down on that because that's very much not true. Well, I'm not arguing. Please don't say that again. I'm not arguing that. They never conceded that a floor panel extension can be unconnected to the floor panel. That's not my argument. I apologize if that's. You said it in the blue brief. You said it again in the gray brief, and now I had to hear you say it again. I really wish you hadn't said that. That's not. Let me try to explain what I'm saying, and maybe I'm not being clear. I'm not saying they conceded that it can be separate. We never said that. What we said is they conceded. You said it in your blue brief. We said they conceded the word separate means, because it was our proposed construction that said separate. And they told the court, don't adopt that because the word separate means they don't have to even touch. They clearly said that. They said it twice. They said that once in their brief, and then they said it again on the reconsideration. They told the court, don't adopt the word separate in the construction because that means they don't have to touch. But the court adopted the word separate. And so our argument is not. Adopted the word separate in the context of what the specification says. And in fact, it quotes at 846 how the extensions can be formed by trimming the floor panel stock, such that the extensions are integral parts of the floor panel, rather than being joined after the fact is just it's welded in place. So that's how they can be separate. They can be something that's separate, that's joined after the fact, and then welded in place. This is the context of what the court was getting at in terms of the meaning of the word separate. It doesn't have to be a completely integral thing, but it does ultimately have to be a unitary thing. It has to be connected to each other. And that seems like an eminently reasonable understanding of what a floor panel extension would be vis-a-vis a floor panel. It would be extending from the floor panel. Well, the word extension does not inherently mean they have to touch. And there's examples of that, and not in the context of the floor panel. But what the court has done is read limitations from the specification of the preferred embodiment. The claim language is just a floor including one or more floor panels. Their gusset is a flat piece of steel parallel to the floor, welded to part of the floor. It's a floor panel. It's a side post gusset for supporting the side post. That's what they call it. But it's the same thing that's in the patent as a floor panel extension. It's welded to the floor, and it carries it. I'm well into my rebuttal time, so I'll save the rest of the time. Okay, counsel. Counsel, how do I pronounce your name? Van Esch. Mr. Van Esch. May it please the Court, I'm Peter Van Esch on behalf of the Greenbrier Appellees. I'd like, Your Honor, to directly address a couple of questions that were raised in counsel's remarks. First, there was a comment about the floor panel and the deck, and the parties had resolved, as explained in Appendix Pages 13 and 45, that floor panel and deck are to be given the same construction. I'd like to address the questions that, Your Honor, Judge Moore and Judge Shen, that you both asked about a floor panel versus a floor panel extension. The claim term, as this Court observed, is floor panel, and the floor panel can have an extension. The claim term was not floor, and the claim term was not floor extension. And NSC admits that a floor is not the same as a floor panel. NSC's expert, Mr. Selberg, admitted that floor and floor panel are different and that floor was broader, and that's at Appendix Page 4834, Paragraph 44. NSC's infringement theory also concedes that floor and floor panel are different. Well, the claim actually treats them separately, right? There's a floor limitation and a floor panel limitation. Absolutely. That's exactly right, Your Honor. Greenbrier's side post gusset is welded to a side sill. That's not in dispute. NSC argues that the- And nobody's argued that those terms should have the same meaning, have they, that floor and floor panel mean the same thing? No, no, they do not mean the same thing. Okay, next issue. Okay. All right, let me move on then. So a summary judgment should be affirmed on either of two bases. The first basis for affirmance would be that although NSC centered its infringement theory on Greenbrier's side post gusset, NSC does not present any evidence that the side post gusset or any other structure was a floor panel extension. And the second independent basis for affirmance relates to NSC's arguments about touching and use of the word separate in the court's construction. Again, it's undisputed that Greenbrier's side post gusset doesn't touch a floor panel, but the claims, as properly construed, require that the extension of the floor panel touch the floor panel. Therefore, Greenbrier's side post gusset cannot be an extension of the floor panel. Counsel, am I correct that there was no doctrine of equivalence theory being advanced here by the NSC? That's correct. That's correct, Your Honor. I'd like to address counsel's argument that NSC recognizing that it didn't have evidence of a floor panel extension has created what says is a claim construction argument here. And the new claim construction argument is that a floor panel extension can be an extension of something other than the floor panel, which we think is wrong. And that argument is also waived. And we discussed why that argument is wrong. The term construed as floor panel. The plain and ordinary meaning of extension extends. The part is extending from the item that it's attached to. The district court cited a dictionary definition of the plain and ordinary meaning of extension. And in any event, an extension has to touch the item that it's extending. Patent specification figures describe that. And regarding waiver, this argument is waived because NSC didn't make this argument during claim construction. And when I say this argument, I mean the argument that the term extension can be an extension of something other than the floor panel. That argument is waived because it was first raised in the second of NSC's two supplemental summary judgment briefs, at which point it was too late. I'd like to address counsel's argument that Greenbrier agreed somehow that the extension, that the floor panel extension and floor extension were the same. The difference in the use of the terminology of floor extension, floor panel extension, were because NSC's original infringement theory treated the floor and the floor panel as coextensive. So the terms floor and floor panel were used interchangeably because there was no reason to distinguish between, at that time, a floor and a floor panel. And in those instances when the parties used the term floor extension, they were referring to the specifications discussion of a floor panel extension. And then after claim construction, NSC changed its infringement theory regarding what was a floor and what was a floor panel, and that's when NSC said that the horizontal leg of the side sill that the side post gusset is attached to, NSC said that is not, they conceded, that is not a floor panel. They said it was a floor. So in response to NSC's changed theory, Greenbrier explained why its side post gusset was not a floor panel extension. And then once the issues became crystallized and as a result of NSC changing its theory, everyone became more precise in their use of the terminology. Was there ever an argument that the horizontal portion of the side sill is a floor panel extension? No. No, Your Honor. Okay. As a matter of fact, NSC and its experts only ever said the side post gusset was allegedly an extension of the floor, and they never said that the side post gusset was a floor panel extension whether or not a floor panel extension touches the floor. In other words, NSC didn't argue that the side post gusset was an example of a touching or a non-touching floor panel. Even in NSC's reply brief, its final say on the infringement issues at pages 31 and 32, NSC argues only that the side post gusset is what NSC calls a floor extension, a true extension of the floor, or a functional extension of the floor. And that, Your Honor, is not the relevant claim limitation, which is floor panel. I'd like to turn to the NSC's second, what NSC calls its second issue, where NSC focuses on the language separate in the court's construction and argues that as a matter of claim construction, the floor panel extension need not touch the floor panel. I'd like to discuss claim construction. The extension of the floor panel must touch the floor panel. And again, the district court construed the term floor panel, said it could have an extension that was integral or separate. And at the outset, I want to say that NSC was fundamentally wrong in its assertion that because the word separate was in the claim construction, that meant that the floor panel extension didn't have to touch the floor panel. The word separate doesn't mean touching or not touching, because that term can refer to things that are either touching or not touching. For example, consider states. Virginia and Maryland are separate states. They touch. Virginia and New York are separate states. They don't touch. And the point is just because two items can be separate doesn't mean they're not touching. And the court construed the floor panel can have an extension that is integral or separate, and the court explained that meant integrally formed or cut separately and joined after the fact to the floor panel. And so touching between the extension and the floor panel is required, whether the extension is integral or separate. Now, NSC admitted at claim construction that the issue that the court was resolving the claim construction was how the extension of the floor panel could actually be connected, not whether it could or could not be connected. And we discussed that at page 21 of our brief, that NSC made those arguments at claim construction. And in addition, at appendix page 1871, lines 8 through 9, which is from the court's claim construction transcript of that hearing, NSC counsel told the district court that the real dispute is how the pieces can be connected. So the arguments that NSC made at claim construction were that the floor panel extension touches the floor panel. NSC, again, said it could be integral or separate. And NSC said integral was to cover an extension formed integrally and contrasted that with separate, which was to cover a floor panel extension formed separately and later joined in place. And NSC explained in its briefing that that could be either by a butt joint or a lap joint. But in all cases, the extension was touching. And NSC didn't argue and certainly presented no cognizable argument at claim construction that the floor panel extension could be not touching or not extend from the floor panel. And nor, by the way, did NSC argue at claim construction that by putting the word separate in the construction, it meant not touching. Is there anything further? No, nothing further, Your Honor. Okay, thank you, Mr. Gomez. Judge Tinn, you've come down pretty hard on me for statements we made in our brief. I'm going to take one more attempt. I hope I'm not belaboring this too hard, but I feel like I do need to respond. And this is also in response to what counsel just said about what we argued at the claim construction hearing and what the word separate means. So in November of 2020, and this is Appendix 326 in Greenbrier's claim construction brief, Greenbrier told the district court NSC's construction uses the word separate to describe non-integral floor extensions, allowing the floor extensions to be unconnected to the rest of the floor panel. So they knew that our proposed construction, when it used the word separate, included non-touching within the scope of the plain meaning separate. And that's supported by his example he just gave. He said there can be two states that are separate that don't touch. The plain meaning of the word separate includes things that touch. It also includes things that don't touch. Almost a year later, in August of 2021, this is Appendix 2524, Greenbrier told the district court in response to our motion for reconsideration, which is the motion that led the court to put the word separate into its claim construction, Greenbrier said, quote, under NSC's erroneous proposal, so they're not agreeing with our claim construction. We're not arguing they agreed with our claim construction. But they agreed that even components that are not in contact with, i.e. that are separate from, the floor sheet may be deemed a floor panel extension. So Greenbrier knew that the word separate in our proposed construction included non-touching. The fact remains that what the district court did was it replaced the word abutting from the opposing counsel's proposed construction with separate. And it did that in the context to make clear that the connection that would be required of a floor extension to a floor panel didn't have to be a specific type of connection, i.e. abutting. It could be other types of connection as well. And that's what the whole debate was about with respect to the term abutting. The debate was about abutting because we all agreed, both parties agreed, and told the court that the word separate includes non-touching. That was agreed. We were focused on the dispute, and their construction was too narrow because they were requiring abutting and butt welds. But my point is the court's claim construction, the actual claim construction issued by the court, simply says extensions and simply says they can be separate and does not say that separate requires touching and does not say that they have to be floor panel extensions. I don't think it's debatable that the court then modified that implicitly in its summary judgment order to require two additional limitations after our expert reports were already filed, after all the discovery was done. If we disagree with you on that, then do we affirm? Disagree that the court changed its claim construction? That's right. Not necessarily. In the context of what it said and what it quoted from the spec at 846 in its original Markman order, and then on recon, it modified the construction that all along it was understood that an extension has to actually be connected to a floor panel sheet. What we would still maintain the court's construction then, as interpreted, is incorrect. Now, I know we proposed that as an alternative because the court had already decided that they wanted to include plurality of sheets as opposed to a broader term for these floor panels. And so we said, well, if the court is not going to change its mind on sheet, at the very least we need them to be separate. And so, yes, we did propose this construction, but we proposed it in the context that everybody understood extensions could be floor extensions, which was their proposed construction, and we proposed it in the context that separate could be non-touching, which the parties both understood that word to mean. And so I don't think it would be fair to hold us to that claim construction, which in the party's minds was very clear when we proposed that alternative construction. Okay, Mr. Lovell, you're way past your time, so we're going to have to conclude this argument. Thank both counsel. The case is taken under submission.